# David Goodbread et al., Appellants, v. The Philadelphia, Bala & Bryn Mawr Turnpike Company.

*Corporations — Charter of incorporation—Impeachment of in collateral proceedings.*

The charter of incorporation cannot be impeached by a private suitor in a collateral proceeding, but only by the state in a proceeding in the nature of a quo warranto.

The statements in letters patent issued by the governor to a corporation must be taken as verity, and cannot be contradicted by either the minute book of the company or the testimony of the officers.

*Corporations—Letters patent—Recording of certificate of incorporation—Acts of April 8, 1861, May 15, 1874, and April 29, 1874.*

Where a corporation has been sold under the provisions of the Act of April 8, 1861, P. L. 259, and a new corporation organized by the purchasers under the provisions of that act, to which letters patent are issued by the governor of the commonwealth under the Act of May 15, 1874, P. L. 186, the corporation so organized is not subject to the provisions of the General Corporation Act of April 29, 1874, P. L. 73, and section 3 of that act, requiring the certificate of incorporation to be recorded in the county in which the corporation does business, has no application.

Argued Dec. 6, 1899. Appeal, No. 115, Oct. T., 1899, by plaintiff, from decree of C. P. Montgomery Co., Oct. T., 1898, No. 3, dismissing plaintiffs' bill in equity. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by BEAVER, J.

Bill for an injunction. Before WEAND, J.

The facts sufficiently appear in the opinion of the court.

*Error assigned* among others was (16) in dismissing plaintiffs' bill.

*Joseph S. Goodbread*, with him *Silas Jones* and *Joseph Fornance*, for appellants.—The charter or certificate of incorporation should have been recorded in Montgomery county: Act of April 29, 1874, P. L. 73, sec. 3; 3 Pepper & Lewis's Digest of Decisions, 4817; Guckart v. Hacke, 159 Pa. 303; Bank v. Crowell, 177 Pa. 313; Braddock Boro. v. Penn Water Co., 189 Pa. 379.

The toll house should have been built so as to allow the plaintiff access to his property from the portion of the road immediately back of the toll house : Trickett on Pennsylvania Road Law, 391 ; Chestnut Hill and Spring House Turnpike Co. v. Piper, 15 W. N. C. 55 ; 27 Amer. & Eng. Ency. of Law, 329.

*William F. Solly*, with him *C. Henry Stinson*, for appellee.— The charter of incorporation cannot be called in question in a collateral proceeding : Com. v. Pittsburg & Connellsville R. R. Co., 58 Pa. 26 ; Cochran v. Arnold, 58 Pa. 399 ; Garrett v. Dillsburg & Mechanicsburg R. R. Co., 78 Pa. 465 ; Johnston v. Elizabeth B. & L. Assn., 104 Pa. 394 ; Twelfth Street Market Co. v. P. & R. Terminal Co., 142 Pa. 580 ; Western Penna. R. Co.'s Appeal, 104 Pa. 399.

OPINION BY BEAVER, J., March 21, 1900 :

The Blockley & Merion Turnpike Plank-Road Company was incorporated under the provisions of the Act of April 5, 1853, P. L. 291. A part of the 5th section of the said act reads as follows : " It shall be lawful for the said company to erect within the limits of their road, at each of their gates, a toll house or dwelling house for the use and accommodation of the toll collector at such gate." The Act of April 8, 1861, P. L. 259, provides, " That, whenever any railroad, canal, turnpike, bridge or plank road or any corporation created by or under any law of this state shall be sold, under and by virtue of any process or decree of any court of this state or of the circuit court of the United States, the person or persons for or on whose account such railroad, canal, turnpike or plank road may be purchased shall be, and they are hereby, constituted a body politic and corporate, and shall be vested with all the right, title, interest, property, possession, claim and demand, in law and equity, of, in and to such railroad, canal, turnpike, bridge or plank road, with its appurtenances, and with all the rights, powers, immunities, privileges and franchises of the corporation as whose the same may have been so sold and which may have been granted to or conferred thereupon by any act or acts of assembly whatsoever in force at the time of such sale and conveyance, and subject to all the restrictions imposed upon such

corporation by any act or acts, except so far as the same are modified hereby." The 2d section of the said act provides " That it shall be the duty of said new corporation, within one calendar month after its organization, to make a certificate thereof under its common seal, attested by the signature of its president, specifying the date of such organization, the name so adopted, the amount of capital stock and the names of its president and directors, and transmit the said certificate to the secretary of state at Harrisburg, to be filed in his office and there remain of record, and a certified copy of such certificate so filed shall be evidence of the corporate existence of said new corporation." The Act of May 15, 1874, P. L. 186, authorizes the issuing of letters patent by the governor upon the application of the president and secretary of any corporation heretofore or hereafter created, under any general or special law of this commonwealth, upon the conditions therein prescribed.

In accordance with the provisions of the act last above recited, the governor of Pennsylvania issued letters patent on September 15, 1890, to " The Philadelphia, Bala & Bryn Mawr Turnpike Company, a corporation created by reorganization, after sale, by the purchasers of the rights and franchises of the Blockley & Merion Turnpike & Plank Road Company, reciting, " That said corporation has complied with all the conditions provided by law, and the constitution to enable it to have a corporate existence and transact business," and declaring " the said corporation to be a body corporate and politic in deed and in law, by the name, style and title of Philadelphia, Bala & Bryn Mawr Turnpike Company, and entitled to all the privileges, immunities, franchises and powers conferred by the act approved the fifth day of April, Anno Domini, one thousand eight hundred and fifty-three, entitled ' An act to incorporate the Blockley & Merion Turnpike & Plank Road Co., etc., and the various supplements thereto.' The plaintiffs filed their bill in equity, reciting that the defendants are erecting a building thereon (the land of the plaintiffs) for the use of said company for the purpose of a toll and dwelling house ; that the said toll house and dwelling house is being erected exclusively upon the roadbed of said turnpike but within a few inches of the fence between the turnpike and the property of the complainants," and praying that the defendants be enjoined from continuing

the erection and construction of the said building and that they be ordered forthwith to take down and remove the same.

The defendant in its answer asserted its legal right to erect the said building, as provided in the Act of April 5, 1853, supra. Some testimony was taken, after which it was agreed, as appears by the record, that " the defendant's answer having been filed, it is agreed that the case shall be considered as heard on bill and answer, final hearing." The court below, after consideration, dismissed the bill.

As we understand the appellant's contention, there is no denial of the right of the Blockley & Merion Turnpike & Plank Road Company " to erect within the limits of their road at each of their gates a toll house or dwelling house for the use and accommodation of the toll collector at such gate." The contention is that the present defendants have not succeeded to the rights of the Blockley & Merion Turnpike & Plank Road Company, or at least that there is no sufficient evidence of such a succession to entitle them to claim those rights in this action. This contention is based upon several distinct propositions raised by the several assignments of error.

Their first proposition is that the certificate of incorporation of the defendant company not being recorded in Montgomery county, as required by section 3 of the Act of April 29, 1874, P. L. 73, cannot be given in evidence. The answer to this is that the defendant corporation is not organized under the general corporation act referred to, nor is the patent thereof issued under the provisions of that act. The corporation itself is organized under the Act of April 8, 1861, P. L. 259, supra, in accordance with the provisions of which the certificate therein provided for is to be filed in the office of the secretary of the commonwealth, and a copy of such certificate so filed is to be evidence of the corporate existence of the new corporation. The patent was issued not under the general corporation act of 1874, supra, but under the subsequent act of May 15, 1874. The corporation, therefore, was not subject to the provisions of the general corporation act and the court below, as we think properly, held that it was not necessary to have the certificate recorded in Montgomery county.

It is urged by the appellant that, if the governor, under the act of May 15, 1874, can by his letters patent confer upon

a new corporation the rights and privileges of a corporation chartered under an act which antedated the new constitution, he has greater power than the legislature, inasmuch as the legislature cannot under the constitution grant a charter or create a corporation by a special act. This is in a sense true, but it arises out of the exercise of the different functions of the executive and legislative branches of the commonwealth respectively. The governor executes the laws. By the letters patent authorized to be issued under the act last named, he simply gives effect to laws in force before the adoption of the new constitution and not repealed. We see no constitutional objection to the exercise of such a power and it is, in no sense, different from the enforcement of any other special law enacted by the legislature prior to the constitution of 1874.

The letters patent issued by the governor distinctly recited that the corporation defendant was " entitled to all the privileges, immunities, franchises and powers conferred by the act approved the fifth day of April, Anno Domini, one thousand eight hundred and fifty-three, entitled ' An act to incorporate the Blockley & Merion Turnpike & Plank Road Co.,' etc., and the various supplements thereto." This declaration must be taken as verity, and it could not be contradicted by either the minute book of the company or, after the destruction of the minute book, by the testimony of its officers, either as to the contents of the minute book, or as to the powers exercised by the corporation. An inquiry as to whether or not the defendants were acting within the rights, liberties and privileges conferred upon them by their charter might have been entirely proper, but the charter itself could not be attacked in a collateral proceeding and, therefore, the question as to whether or not the present defendant acquired the rights and privileges of the Blockley & Merion Turnpike & Plank Road Company, conferred by the provisions of the act of April 5, 1853, could not be raised in this proceeding. That could be done only by the state in a proceeding in the nature of a quo warranto: Cochran v. Arnold, 58 Pa. 399; Garrett v. Dillsburg R. R. Co., 78 Pa. 465. In Johnston v. Elizabeth B. & L. Assn., 104 Pa. 394, it was said: " The evidence, the rejection of which forms the subject of the first assignment of error, was clearly incompetent. The tendency and object of it was to impeach the charter of the

plaintiff corporation. That this cannot be done in a collateral proceeding has been so often decided that reference to the authorities is almost needless: " Spahr v. Bank, 94 Pa. 429; 12th St. Market Co. v. Terminal R. Co., 142 Pa. 580.

There is no allegation in the plaintiff's bill that the structure complained of was being erected for any other purpose than that which is authorized by the act of incorporation of the Blockley & Merion Turnpike, etc., Company, or that more space in front of their land was being used for the purpose than was absolutely necessary. It is affirmatively stated that "the said toll house and dwelling house is being erected exclusively upon the roadbed of said turnpike." It seems to us plainly apparent, therefore, that the defendant had the right to erect and maintain the building complained of as a toll house and dwelling house for the toll collector.

This sufficiently disposes of all the assignments of error, although not discussed seriatim, and, from a consideration of the entire case, we cannot see that there was error in dismissing the plaintiff's bill. The decree of the court below is, therefore, affirmed, and the appeal dismissed at the costs of the appellant, without prejudice to the right of the plaintiff to recover at law damages if any legally recoverable.

WILLIAM W. PORTER, J., concurs in the judgment.