## Andrews et al. *v.* The Public Service Commission et al.

*Public Service Company Law—Public Service Commission—Motor buses—Certificates of public convenience—Restrictions—Reasonableness.*

The Public Service Company Law gives the Commission the power at all times to regulate the service of such companies. It provides that such common carrier must provide facilities and service "as the commission, having regard to the general convenience and safety of the public, may require" and "generally may make any other arrangements and improvements in its service which the commission may lawfully and reasonably determine and require."

Applicants for incorporation of a public service company applied for a certificate of public convenience pursuant to article 3, section 2 (a) (b) (1913 P. L. 1388) and articles 18 and 19 (P. L. 1414) of the Public Service Company law, evidencing the Commission's approval of (1) the incorporation, organization and creation of such company, and (2) of the beginning of the exercise of the rights, powers and privileges exerciseable by such company.

*Held:* the statute empowers the commission to grant its certificate of approval of the beginning by the corporation of the exercise of its rights, powers and privileges, upon condition (1) that the exercise thereof terminate at the end of two years unless a renewal of such rights is granted by the commission, and (2) that the transportation of passengers be limited in a specified manner to avoid unreasonable competition with other existing transportation service.

In appeals from the Public Service Commission the order should be assigned for error if a review is desired.

Argued April 16, 1926. Appeal No. 163, April T., 1926, by applicants, from order of Public Service Commission, Application No. 13,453, 1925, in the case of the Application of T. O. Andrews et al., for a certificate of public convenience, evidencing the right to operate a motor bus. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Application for a certificate of public convenience to operate a motor bus.

The facts are stated in the opinion of the Superior Court.

The Public Service Commission granted a certificate for two years, and with the further provision as noted in the opinion of the Superior Court. Applicants appealed.

*Errors assigned* were in imposing the limitation of two years and in restricting the manner of the operations of the applicants.

*J. S. Rilling,* and with him *P. G. Gifford,* for appellants.

*Charles H. English,* and with him *John B. Brooks* and *Frank B. Quinn,* for Erie Railways Company and Erie Coach Company, intervening appellees.

*Frank M. Hunter,* Special Counsel, and with him *John Fox Weiss,* Asst. Counsel, and *W. Y. Blanning,* Legal Assistant, for the Public Service Commission.

OPINION BY LINN, J., July 8, 1926:

The appellants are the incorporators of the Glenwood Bus Line. They applied for letters patent pursuant to the general incorporation act of 1874 and supplements, to become a common carrier of passengers on the streets of Erie and vicinity as set forth in their application which was certified to the commission. They then filed their petition with the commission praying for "a certificate of public convenience pursuant to article III, section 2 (a) (b) [1913 P. L. 1388] and article V, sections 18 and 19 [P. L. 1414] of the Public Service Company Law, evidencing its approval of [1] the incorporation, organization and creation, and [2] of the beginning of the exercise of the rights, powers and privileges granted thereby......" The order of the commission has not been assigned for error, as it should have been if a review was desired: Jenkins Twp. v. Pub. Ser. Com., 65 Pa. Superior Ct. 122, 136. It is in the following words: "It is ordered: That a certificate of public convenience issue evidencing the Commission's approval of the incorporation of the said company, and subject to the limitations and conditions as above determined, the approval of the beginning of the exercise of the rights, powers and privileges granted thereby."

We shall, however, consider the case as though the order had been formally assigned; there are but three assignments, the third merely repeating the substance of the first and second. The first complains that the commission's approval of the beginning by the corporation of the exercise of its rights, powers and privileges was granted on condition that the exercise of those rights, powers and privileges should "terminate on June 1, 1927, unless renewal of said rights is duly granted by the Commission"; in other words, on June 1, 1927, it must discontinue its bus service unless the commission renews its certificate.

The second assignment complains that the exercise of the powers is "limited and restricted to transportation of through passengers from points on route to points in the Glenwood District five hundred (500) feet or more distant from the line of existing street railway companies or lines of the Erie Railways Company, and the transportation of persons from said points in Glenwood District - to terminus at Perry Square or intermediate points on the route. The intent and purpose of this condition being to prohibit the transportation of local - passengers between terminus at Perry Square and points in Glenwood District five hundred (500) feet or less from existing street railway line or lines of the Erie Railways Company." The argument of appellants treats those conditions as applying both to the approval of the incorporation which is required by article III, section 2 (a), and to the approval of the beginning of the exercise of the corporate powers as required by article III, section 2 (b). In that understanding of the order, the appellants are mistaken; it makes the beginning of the exercise of corporate powers only subject to the conditions.

Article III, section 2, is as follows: "Upon the approval of the commission evidenced by its Certificate of Public Convenience, first had and obtained, and not otherwise, it shall be lawful for any proposed public service company—

"(a)  To be incorporated, organized, or created: Provided, That existing laws relative to the incorporation, organization and creation of such companies shall first have been complied with, prior to the application to the commission for its Certificate of Public Convenience.

"(b)  To begin the exercise of any right, power, franchise, or privilege under any ordinance, municipal contract, or otherwise." (1913 P. L. 1388.)

Article V, section 18, provides: "When application shall be made to the commission by any proposed public service company for the approval by said commission of its incorporation, or organization, or creation, ...... or for permission from the commission to begin the exercise of any right, power, franchise, or privilege......such approval in each and every such case or kind of application shall be given only if and when the said commission shall find or determine that the granting or approval of such application is necessary or proper for the service, accommodation, convenience, or safety of the public." . Section 19 provides: "For the purpose of enabling the commission to make such findings or determination it shall hold such hearings, which shall be public, and subpoena and examine such witnesses and compel the production of and examine such books, papers, contracts, or other documents, and make such inquiries, physical examinations, valuations, and investigations as it may deem necessary or proper, in enabling it to reach a determination. Due notice of every such hearing shall be given, and in every case the commission shall make a finding or determination in writing, stating whether or not its approval is given, and, if given, shall issue its certificate, to be known as its Certificate of Public Convenience, under its seal, and file among its records a duplicate of every such certificate." See Bethlehem City Water Co. v. Pub. Ser. Com., 70 Pa. Superior Ct. 499.

The commission heard the case. There was evidence that the Erie Railways Company furnishes street car service in Erie. A short time before appellants applied for incorporation, another application for the incorporation of a company to be known as the Erie Coach Company was filed by other applicants said to be connected with the Erie Railways Company, intending to operate a motor bus passenger service in connection with the street railway

lines of the Erie Railways Company; these incorporators of the Erie Coach Company filed a protest with the commission against the granting of the application of appellants. There is evidence that the Glenwood District referred to in the record is in the City of Erie, in "a new part of it, the southern part." The proposed route of appellants' bus line extended from the populous center of the city over streets on parts of which the Erie Railways Company conducts its street car service, and in territory through part of which the Erie Coach Company proposed to operate, and from that populous center to the Glenwood District. Appellants' company if permitted to conduct the proposed transportation service, would be in active competition with the Erie Railways Company and also with the proposed service to be rendered by the Coach Company. Excepting that the existing street car service extends to and along part of one of the boundaries of the so-called Glenwood District, there is no street car or bus service in the district. There is evidence indicating that such service is desirable. It was not the purpose of the Erie Coach Company to render service in that district. A witness for the protestants testified that the Glenwood District at the present time was not thickly enough settled to justify extending street car lines into the district, and that such service if rendered now could only be conducted at a loss. There is also evidence that it is a growing residential district.

The commission is an administrative body established for "the purpose of regulating public service companies and of carrying out the provisions of" the Public Service Company Law: Article IV, sec. 1, P. L. 1306. In familiar decisions from Relief Electric &c' Co.'s Petition, 63 Pa. Superior Ct. 1, to the present time it has been repeatedly held that the commission has power when the evidence so justifies its exercise to limit or prevent competition in the interest of the

maintenance of adequate existing service. In Gongaware v. Commission, 83 Pa. Superior Ct. 269, in which the commission concluded competition in bus service was undesirable in the district in question, we said: "The propriety of permitting the service in the borough referred to is peculiarly one within the discretion of the Public Service Commission." And in Kulp v. Pub. Ser. Com., 82 Pa. Superior Ct. 83, at page 90, we referred to the power of the commission to restrict competition, as stated in Relief Electric &c. Co.'s petition, supra, and added that the commission might likewise in the "interest of the public, annex reasonable limitations, which it may subsequently modify or withdraw, to its approval of the right to begin the exercise of such functions, and thus permit an arrangement which will insure an adequate supply of electricity to the public through existing utilities at fair rates and without the evil incident to destructive competition." See, too, Hege v. Pub. Ser. Com., 86 Pa. Superior Ct. 558; Perry Co. T. & T. Co. v. Pub. Ser. Com., 265 Pa. 274, 280; Collins v. Pub. Ser. Com., 84 Pa. Superior Ct. 58.

As appellants cannot deny the regulatory power of the commission, including the power to prevent or restrict competition which may be done by means of conditions annexed to the beginning of the exercise of its activity on the city streets, and as the record here shows that competition will be inevitable if appellants operate the bus line as proposed, they have not met the burden imposed on them by the law; for in "such cases the orders of the commission shall be prima facie evidence of the reasonableness thereof, and the burden of proving the contrary shall be upon the appellant.": article VI, section 23, P. L. 1427.

As the complaint, then, is to the action of the commission about a matter that is wholly within its administrative powers, we need not discuss in detail the conditions imposed by the commission further than

to say that it would seem obvious that the requirement of an application to the commission at the end of two years for a renewal of the exercise of the powers referred to, imposed no burden on the appellants not contemplated by the statute, for the law invests the commission with power at all times to regulate the service of such companies; it provides,—article II, section 1, par. m, that such common carrier must provide facilities and service "as the commission, having regard to the general convenience and safety of the public, may require" and "generally may make any other arrangements and improvements in its service which the commission may lawfully and reasonably determine and require.": P. L. 1381; and as further indicating the comprehensive character of the power of the commission in that respect, it is vested with authority to proceed against such corporations of its own, motion and without formal complaint: article V, section 2, P. L. 1403.

The same comment is applicable to the conditions imposed and complained of in the second assignment of error. The situation dealt with is peculiarly local and at all times subject to and within the jurisdiction of the commission, with the right in anyone interested —any utility or patron—to appeal to the commission for a change in the condition if and as the service rendered or required may make such change desirable. This court is not justified in differing from the commission in the decision of the administrative question presented by the assignments of error considered in the light of the evidence.

The appeal is dismissed.