# Kerry *v.* West Penn Power Company, Appellant.

*Electric light companies—Eminent domain proceedings—Resolutions—Scope—Description of policy.*

A resolution of a board of directors of an electric power company, exercising the right of eminent domain, is sufficient, which adequately describes the land about to be condemned, and provides that the company "under its corporate powers and for its proper corporate purposes, enter upon, take and appropriate a right of way for a transmission line supported on wood poles for the transmission and distribution of electric light, heat and power, or any of them, over and upon property hereinafter referred to, together with the right to enter upon said property for the purpose of constructing, operating, maintaining, rebuilding and removing said transmission and distribution system and also together with the right to cut and trim such trees or shrubbery located within one hundred feet of the center line of said right of way, as may be necessary to keep the wires and cables free from interference, etc."

Such a resolution making a fixed and definite location of the center of the right of way through the property condemned, and the granting of a certificate of public convenience from the Public Service Commission permitting the exercise of such right of eminent domain, fastened a servitude upon the property affected thereby. The space covered by the line as located was thereby seized and appropriated to the purposes of the construction, operation and maintenance of the transmission line, and nothing remained to be done except to compensate the owners. Under the resolution the company acquired the right to use as many wooden poles as were reasonably necessary to maintain the line or to rebuild the same in case there is a reasonable necessity for such reconstruction.

The granting of a certificate by the Public Service Commission, permitting the exercise of the right of eminent domain by an electric company, determines neither the validity nor the scope of the subsequent proceeding by eminent domain. It evidences only the preliminary approval by the body to which the general regulation of the service of such companies was entrusted as specified in the statute.

Argued April 28, 1925. Appeal No. 198, April T., 1925, by defendant, from judgment of C. P. Butler County, March T., 1925, No. 132 in the case of John Kerry and May Kerry v. West Penn Power Company. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Appeal from award of Viewers.  Before HENNINGER, P. J.

The facts are stated in the opinion of the Superior Court.

In an appeal from award of Viewers the Court framed an issue, and the jury found in favor of the plaintiffs, the land owners, in the sum of $1550. Subsequently the Court filed an opinion in which the amount of the verdict was reduced by $300, and judgment was entered in favor of the plaintiff, and against the defendant, in the sum of $1250. Defendant appealed.

*Errors assigned,* were the charge of the Court, answers to points, and refusal to grant a new trial.

*John H. Jackson,* of *Jackson & Troutman,* for appellant.

*Zeno F. Henninger,* for appellee.

OPINION BY PORTER, J., October 6, 1925:

This is an appeal from a judgment on the verdict of a jury in a proceeding to determine the amount of damage to plaintiffs' property resulting from the condemnation of a right of way by the defendant electric company for a transmission and distribution line over the same, in the exercise of the power conferred by the Act of May 21, 1921, P. L. 1057.

The defendant company desiring to exercise the authority to appropriate property conferred by the statute, the board of directors adopted a resolution, the material parts of which are as follows: "Resolved that the company......under its corporate powers and for its proper corporate purposes, enter upon, take and appropriate a right of way for a transmission line supported on wood poles for the transmission

and distribution of electric light, heat and power, or any of them, over and upon property hereinafter referred to, together with the right to enter upon said property for the purpose of constructing, operating, maintaining, rebuilding and removing said transmission and distribution system, and also together with the right to cut and trim such trees or shrubbery located within one hundred feet of the center line of said right of way, as may be necessary to keep the wires and cables free from interference and to protect said transmission and distribution system from possible falling timber, the center line of which right of way is described as follows'': and then followed, in the resolution, an accurate description, in words at length, of the center line of said right of way through the property of the plaintiffs. This resolution authorized and directed the proper officers of the company ''to execute in the name and under the corporate seal of said company bonds upon the conditions hereinbefore set forth and do such other and further acts as may be necessary in the premises''. The proper officers of the company made application to the Public Service Commission, which body found and determined, after public hearing, that the service to be furnished by the company through the exercise of the power, was necessary and proper for the service, accommodation, convenience and safety of the public. Having thus complied with the provisions of the statute, the company acquired the right to enter upon the land and construct and maintain the transmission line, upon payment to plaintiffs of the damages resulting therefrom or giving security for such payment when ascertained. ''The granting of the certificate, by the Public Service Commission, determines neither the validity nor the scope of subsequent proceedings by eminent domain; it evidences only the preliminary approval by the body to which general regulation of the service of

such companies was entrusted as specified in the statute": Reiber v. Public Service Commission, 83 Pa. Superior Ct. 507.

The parties being unable to agree as to the amount of damages the defendant company tendered to the plaintiffs a bond which they declined to accept and thereupon the bond was presented to and approved by the court. There was attached to this bond a blue print, which indicated that the engineers or officers of the defendant company intended, in the original construction of the line, to support the cross-arms and wires thereof by eight wooden poles. It is proper here to observe that this blue print did not definitely indicate the location of the poles and further it does not appear in the record and evidence as disclosed by appellant's paper book that this plan or blue print was ever submitted to or approved by the board of directors of the defendant company. The contention on behalf of the appellant is that the resolution of the board of directors appropriating the right of way for the transmission line and defining the center line thereof by courses and distances is modified and limited by this draft or blue print attached to the bond filed and that if the defendant company, in the course of the development of its business, finds it necessary to add one or more additional poles to properly support the cross-arms and wires, it will have to resort to another condemnation proceeding and the plaintiffs will be entitled to compensation for this additional servitude imposed upon their land, at such time or times as an additional pole or poles may be installed. The learned judge of the court below held that the blue print attached to the bond did not modify or limit the rights acquired under the resolution of the board of directors of the company and that the company would have the right, under the express terms of that resolution, to use as many poles to support the line as might be reasonably necessary to sustain the

cross-arms and wires rendered necessary by the development of the business. This ruling is assigned for error, and thus is presented the only question involved in this appeal.

There is nothing in the statute under the provisions of which this defendant company is exercising the right of eminent domain similar to the provisions found in the Act of March 17, 1869, P. L. 12, which specifically refers to the right to take being exercisable, "whenever, in the opinion of the board of directors of the railroad company, a condemnation may be necessary for corporate purposes"; but in a taking under the power of eminent domain there must be corporate action, which means the adoption of resolutions to condemn, without which there can be no adverse taking of the property of another; Gring v. Sinking Spring Water Co., 270 Pa. 232.

When the board of directors of the defendant company adopted the resolution making a fixed and definite location of the center of the right of way through the property of the plaintiffs, "together with the right to enter upon said property for the purpose of constructing, operating, maintaining, rebuilding and removing said transmission and distribution system and also together with the right to cut and trim such trees or shrubbery located within one hundred feet of the center line of said right of way, as may be necessary to keep the wires and cables free from interference", and then obtained from the Public Service Commission a certificate of public convenience, there was fastened a servitude upon the property affected thereby. The space covered by the line as located was thereby seized and appropriated to the purposes of the construction, operating and maintenance of the transmission line, and nothing remained to be done except to compensate the owners. After the act of location by the company, the owner or the company might proceed at once to secure an ascertainment of damages. The act of loca-

tion is at the same time the act of appropriation, Williamsport R. Co. v. Railroad Co., 141 Pa. 407; Johnston v. Callery, 173 Pa. 129 and 184 Pa. 146. The resolution of the board of directors did not refer to any plan, and as we have before said, there is nothing in the record to indicate that the plan was ever presented to them for approval. Under that resolution the defendant company acquired the right to use as many wooden poles as were reasonably necessary to maintain the line, or rebuild the same in case there is a reasonable necessity for such reconstruction. The executive officers of the company could not, by attaching an unsatisfactory blue print to the bond deprive the plaintiffs of the damages to which they were entitled.

The judgment is affirmed.